**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SOFEA P.D.,**

**Plaintiff,** **24-CV-883Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #20.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on November 19, 2021, at the age of 20, due to a learning disability, mild retardation, autism spectrum, and oppositional defiant disorder ("ODD") Dkt. #5, pp.90-91. On August 17, 2023, plaintiff, represented by counsel, appeared with Marcey Bryant, plaintiff's care coordinator from Person Centered Services, at an administrative hearing before Administrative Law Judge ("ALJ"), Kieran McCormack for an administrative hearing by telephone, along with an

impartial vocational expert ("VE"), Andrew Vaughn. Dkt. #5, pp.43-80. At the outset of the hearing, plaintiff was unable to provide her social security number; her care coordinator looked it up and gave it to plaintiff before the ALJ directed the care coordinator to leave plaintiff's presence. Dkt. #5, pp.46-47. Plaintiff was subsequently unable to provide her address, prompting the ALJ to take a break so that plaintiff could confer with her attorney and obtain her address. Dkt. #5, pp.47-49. Plaintiff was subsequently unable to spell Silver Creek, the name of her town, for the ALJ. Dkt. #5, p.50. She was also unable to provide the ALJ with a phone number where she could be reached because the phone number wasn't written on the paper that had been provided to her. Dkt. #5, pp.50-51.

Plaintiff testified that she did not have a driver's license or a bank account. Dkt. #5, p.59. She liked to play board games and card games and dance with her friends. Dkt. #5, pp.59-60. Plaintiff described a typical day as getting up at 6 am, brushing her teeth, doing her hair, going to dayhab at 6:30, eating breakfast, going out for community and volunteer work, returning to dayhab, washing hands, eating lunch, playing games and listening to music, cleaning up and going home by 3:30, where she does her chores and laundry and sometimes helps cook dinner before getting ready for bed. Dkt. #5, p.61. When asked about volunteer work, plaintiff explained that her group goes out in the community to do Meals on Wheels, goes to the firehouse, goes shopping and to church. Dkt. #5, p.61. When angry, plaintiff testified that she has hit her mother, sister-in-law and nine year-old nephew and thrown water bottles, televisions and books. Dkt. #5, pp.63-64.

Ms. Bryant testified that she has worked as a care coordinator for individuals with disabilities for the past 18 months. Dkt. #5, p.67. To qualify for the dayhab program, which was through New York State Office for Persons with Developmental Disabilities ("NYSOPWDD"), Ms. Bryant testified that the individual must be unable to be left alone for safety reasons. Dkt. #5, p.70. She further explained that:

> This level of program they do go out in the community and do things, they work on shopping skills, purchasing skills, and then they also go and help at, like, Meals on Weels or the Firehouse and the various volunteer things around the community. They go to Amvets and help sort through clothing and whatnot. So . . . they are trying to instill work skills into the clientele so that hopefully eventually they can go off and get a job, but at this point she's just not able to do so independently.

Dkt. #5, pp.70-71. She also noted that dayhab employees transported and supervised dayhab participants. Dkt. #5, p.73.

Ms. Bryant testified that plaintiff has a poor working memory; is very trusting and childlike in her conversations and understanding of the world around her; writes her name like a primary student; and demonstrates very low reading comprehension. Dkt. #5, pp.67-68. She testified that plaintiff understood the purpose of money, but was unlikely to be able to buy something at a store and ensure she received the correct change back. Dkt. #5, p.69. Ms. Bryant was aware that plaintiff previously had a cell phone which allowed her to meet men online who encouraged her to send inappropriate pictures to them. Dkt. #5, p.69.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was limited to low-stress jobs, defined as jobs containing no more than simple, routine, and repetitive tasks involving only simple work-related decisions with no more than occasional workplace changes and no more than occasional interaction with supervisors, co-workers, and the general public, the VE testified that plaintiff could work as an assembler, cleaner or cafeteria attendant, each of which were light exertion, unskilled positions. Dkt #5, p.75. The VE further opined that if such individual was off task more than 15% of the work day or absent more than once per month, that individual would be deemed unemployable. Dkt. #5, pp.76-77. If such individual also required consistent redirection to remain on task or continuous interaction from a supervisor, the VE testified that the individual would be precluded from competitive employment. Dkt. #5, pp.77-78.

The ALJ rendered a decision that plaintiff was not disabled on September 25, 2023. Dkt. #5, pp.26-37. The Appeals Council denied review on July 16, 2024. Dkt. #5, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 18, 2024. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant

has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the date of her application on November 19, 2021; (2) plaintiff's intelligence disorder, neurodevelopmental disorder, autism, ODD and anxiety disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels and can work at low stress jobs requiring no more than simple, routine, and repetitive tasks involving only simple work-related decisions with no more than occasional workplace changes and no more than occasional interaction with supervisors, co-workers and the general public; and (5) plaintiff was capable of working as an assembler, cleaner, or cafeteria worker, each of which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.26-37.

Plaintiff argues that the ALJ failed to afford sufficient consideration to plaintiff's intellectual limitations and erroneously assessed the medical source opinion of the consultative examiner. Dkt. #12-1, pp.15-16. Specifically, plaintiff argues that the

ALJ's determination that plaintiff demonstrated moderate limitations when the consultative examiner opined that plaintiff demonstrated moderate-marked limitations is unsupported by substantial evidence, especially in light of the consultative examiner's recommendation that plaintiff consider vocational training and rehabilitation in an extremely structured, routine and rote environment with limited hours. Dkt. #12-1, pp.15-16 & 19. In any event, plaintiff argues that the ALJ's RFC fails to accommodate even moderate limitations set forth by the consultative examiner. Dkt. #12-1, p.17. Plaintiff also argues that it was error for the ALJ to discount the consultative examiner's opinion based upon the ALJ's determination that such limitations were inconsistent with mental status findings in psychiatric records when the consultative examiner indicated that plaintiff's limitations resulted from her cognitive impairments. Dkt. #12-1, p.20. Plaintiff further argues that it was error to credit state agency reviewing psychologists who rendered their opinions before the record was complete, over the consultative examiner. Dkt. #12-1, pp.21-24. Finally, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to address evidence of plaintiff's need for supported employment services, substantial accommodations afforded plaintiff when she was a student, and statements from vocational rehabilitation and OPWDD providers. Dkt. #12-1, pp.27-30.

The Commissioner argues that the ALJ's decision is supported by substantial evidence and free of legal error. Dkt. #17-1, p.6. More specifically, the Commissioner argues that the ALJ reasonably determined that plaintiff's intellectual and other impairments imposed no more than moderate functional limitations and did not

preclude plaintiff from employment. Dkt. #17-1, p.7. For example, the Commissioner argues that the ALJ appropriately relied upon evidence that plaintiff graduated from high school, participated in a work-based learning internship at a grocery store, and could count to 10 and perform simple one-step mathematical calculations, as well as her testimony regarding her activities of daily living. Dkt. #17-1, pp.8-9. The Commissioner also argues that the ALJ properly evaluated the opinion evidence and reasonably determined that plaintiff's mental health records did not support the severity of the consultative examiner's functional limitations. Dkt. #17-1, pp.11-14. The Commissioner further argues that the ALJ properly accounted for the consultative examiner's opinions and appropriately considered testimony from her case worker and other evidence regarding support provided to plaintiff. Dkt. #17-1, pp.14-18.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record

to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff underwent a consultative intelligence evaluation by Susan Santarpia on August 19, 2022. Dkt. #5, pp.531-534. Dr. Santarpia observed that plaintiff worked with reflection and deliberation with good attention and concentration to obtain a

valid and reliable estimate of her current intellectual functioning, which was assessed to fall within the extremely low range of ability, with a full scale IQ of 63. Dkt. #5, p.532. Dr. Santarpia opined that plaintiff

> presents as able to understand, remember, and apply simple directions and instructions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire within normal limits. Moderate to marked limitations in understanding, remembering, and applying complex directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, regulating emotion, controlling behavior, and maintaining well-being, and being aware of normal hazards and take appropriate precautions. The difficulties are caused by cognitive inefficiencies.

Dkt. #5, p.533. Dr. Santarpia recommended vocational training and rehabilitation in an extremely structured, routined [sic], and rote environment with limited hours. Dkt. #5, p.534.

Dr. Santarpia also conducted a psychiatric evaluation of plaintiff on August 19, 2022. Dkt. #5, pp.535-528. Upon mental status evaluation, Dr. Santarpia noted plaintiff's demeanor and responsiveness to questions as cooperative and her manner of relating and overall presentation as fair. Dkt. #5, p.536. Plaintiff's expressive and receptive language was noted as adequate, with coherent and goal directed thought processes. Dkt. #5, p.536. Her affect was slightly restricted. Dkt. #5, p.536. Plaintiff's attention and concentration was impaired due to her limited intellectual functioning; she could count to 10 and do simple one-step mathematical calculation, but could not do two-step mathematical calculation or understand the directions for serial 7s or serial 3s.

Dkt. #5, p.537. Plaintiff's memory skills were also impaired due to her limited intellectual functioning; she could recite 3 of 3 objects immediately and 2 of 3 after a delay, and recite 4 digits forward, but none in reverse order. Dkt. #5, p.537. Plaintiff's cognitive functioning was noted to be impaired, with a somewhat limited general fund of information. Dkt. #5, p.537. Her insight and judgment was noted as fair.Dkt. #5, p.537.

The state agency reviewing psychologist, P. Roy-Petrick, Ph.D., reviewed plaintiff's application pursuant to Listing 12.05 (Intellectual Disorder) and 12.08 (Personality and Impulse-Control Disorders) and opined that plaintiff demonstrated moderate limitations in her ability to understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage onself. Dkt. #5, p.106. Dr. Roy-Petrick further opined that plaintiff would be moderately limited in her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out detailed instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Dkt. #5, pp.109-111.

The ALJ determined that Dr. Santarpia's opinions were "generally persuasive" and "essentially supported by, and consistent with, [her] own mental status examination of the [plaintiff] as well as the preponderance of [the] rest of the psychiatric evidence of record." Dkt. #5, p.34. However, the ALJ determined that "the opinions

regarding moderate-marked limitations are not persuasive, as they are inconsistent with the preponderance of the normal and unremarkable findings from mental status examinations since May 2019." Dkt. #5, p.34. The ALJ also found that Dr. Santarpia's opinions regarding moderate-marked limitations inconsistent with the opinion of Dr. Roy-Petrick, who reviewed Dr. Santarpia's opinions, as well as other evidence in the record, and opined that the plaintiff had no more than moderate psychiatric limitations. Dkt. #5, pp.34-35. The ALJ found Dr. Roy-Petrick's psychiatric opinions of moderate limitations perusasive "[d]ue to psychiatric specialties and the fact that the opinions are supported by, and consistent with, the preponderance of the rest of the psychiatric evidence of record." Dkt. #5, p.35. For example, the ALJ noted normal and unremarkable findings on mental status examination since May of 2019 with the exception of an exacerbation of psychiatric symptoms in the setting of non-compliance with prescribed medication prompting emergency room treatment on November 24, 2020. Dkt. #5, p.35. The ALJ found Ms. Bryant's hearing testimony unpersuasive as she has no medical training. Dkt. #5, p.35. The ALJ also noted that the fact that plaintiff received services from the NYSOPWDD was not binding on the SSA. Dkt. #5, p.35.

The ALJ erred in analyzing the medical source opinion evidence. While an ALJ is permitted to rely on a state agency medical consultant's opinion, Dr. Roy-Petrick's opinion that plaintiff experienced no more than moderate functional limitations is not supported by the evidence cited nor is it consistent with the overall evidence of record. With respect to supportability, for example, Dr. Roy-Petrick relied upon the consultative examination of Dr. Santarpia, which, *inter alia,* assessed plaintiff's intellectual functioning

to fall within the extremely low range of ability, with a full scale IQ of 63, and educational records indicating the plaintiff was in a 1:12:1 self-contained setting with considerable support,[1] as well as records from plaintiff's involuntary admission to Erie County Medical Center's Comprehensive Psychiatric Emergency Program following a violent outburst towards family where she threw a cat down a flight of stairs. Dkt. #5, p.532. Moreover, the ALJ's determination that Dr. Roy-Petrick's assessment of moderate limitations was consistent with the normal and unremarkable findings on mental status examination since May 2019 appears to overlook the primacy of plaintiff's intellectual impairment. In any event, the Court notes that psychiatric records during this time frame indicate a goal of decreasing angry outbursts leading to hitting/ throwing/yelling (Dkt. #5, p.791), concerns about plaintiff's inappropriate boundaries with men (Dkt. #5, p.794), plaintiff's destruction of her bedroom in an angry outburst (Dkt. #5, p.816), and plaintiff's attempt to hit a three-year old. Dkt. #5, p.816. Finally, the ALJ erred by failing to consider evidence from plaintiff's care managers noting plaintiff's "struggles with verbal aggression and property destruction"; "struggles with maintaining boundaries with others"; and physical aggression. Dkt. #5, pp.810 & 825. Although they are not

[1] The School Psychological Report, completed November 18, 2020, indicates that plaintiff rquired repetition of material to process, practice and fully develop the ability to complete a task or an activity in class or at her internship. Dkt. #5, p.314. It also indicates that plaintiff needs to develop better personal hygiene in a consistent and independent manner and develop awareness for general personal safety habits at home, school and community. Dkt. #5, p.315. She was noted to need assistance getting up in the morning and reminders to shower and brush her teeth. Dkt. #5, p.316. It was also noted that plaintiff needed to learn to complete chores at home without reminders or conflict.Dkt. #5, p.317. An adaptive behavior rating form completed by plaintiff's teacher yielded low range scores across the Communication, Daily Living Skills, Socialization, and overall Adaptive Behavior Composite domains. Dkt. #5, p.320. Plaintiff also received moderately high range scores across the Internalizing and Externalizing Maladaptive Behavior domains. Dkt. #5, p.320.

acceptable medical sources, their daily observations support more than moderate functional limitations. Furthermore, while not determinative, plaintiff's acceptance into SASi's WOW Day Habilitation program indicates that plaintiff was deemed unable to be left alone for safety reasons (Dkt. #5, p.7), which is indicative of more than moderate functional limitations. It also provides context to plaintiff's reported volunteer activities. Overall, therefore, the Court finds that the ALJ's assessment of the supportability and consistency of Dr. Roy-Petrick's opinion is insufficient and remand is required for further administrative proceedings.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12), is granted and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**September 30, 2026**

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**